THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. |
| LOUISIANA GENERATING, LLC, | ) ) ) |  |
| Defendant. | ) ) ) ) |  |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges:

### NATURE OF THE ACTION

1. This is a civil action brought against Louisiana Generating, LLC ("Louisiana Generating") (or "defendant") pursuant to Sections 113(b) and 167 of the Clean Air Act ("the Act"), 42 U.S.C. § 7413(b) and 7477, for injunctive relief and the assessment of civil penalties for violations of the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-92; the federally approved Louisiana PSD regulations of the Louisiana State Implementation Plan ("SIP"); Title V of the Act, 42 U.S.C. §§ 7661-7661f, and the federally approved Louisiana Title V program, or any rule or permit issued thereunder.

2. The defendant owns and operates two electric generating units at a plant in Louisiana which underwent modification without appropriate and/or adequate permits, and without installing and employing the best available control technology ("BACT") to control emissions of nitrogen oxides ("$NO_x$") and/or sulfur dioxide ("$SO_2$") as the Act requires.

3. As a result of defendant's operation of the generating units following these unlawful modifications and the absence of appropriate controls, significant amounts of $NO_X$ and $SO_2$ pollution each year have been, and still are being, released into the atmosphere.

## JURISDICTION AND VENUE

4. This Court has jurisdiction of the subject matter of this action pursuant to Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

5. Venue is proper in this District pursuant to Sections 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), (c), and 1395(a), because violations occurred and are occurring in this District, the facilities at issue are operated by the defendant in this District, and Defendant has its headquarters and principal place of business in this District.

## NOTICES

6. On December 8, 2006, the EPA issued a Notice and Finding of Violations ("NOV") to the defendant pursuant to Section 113(a)(1) and (3) of Act, 42 U.S.C. §§ 7413(a)(1) and (3), and provided a copy of the NOV to the State of Louisiana.

7. The United States has provided notice of the commencement of this action to the State of Louisiana as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

8. The 30-day period established in 42 U.S.C. § 7413, between issuance of the NOV and commencement of a civil action, has elapsed.

## THE DEFENDANT

9. The defendant Louisiana Generating owns and operates the Big Cajun II Power Plant ("Big Cajun II"), a coal-fired electric utility steam generating power plant located four miles northeast of New Roads, Point Coupee Parish, Louisiana. The defendant is a limited liability corporation incorporated in the State of Delaware, and a wholly owned subsidiary of NRG Energy, Inc. ("NRG Energy").

10. The defendant is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

## STATUTORY BACKGROUND

11. The Clean Air Act is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

<u>The National Ambient Air Quality Standards</u>

12. Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for those air pollutants ("criteria pollutants") for which air quality criteria have been issued pursuant to Section 108 of the Act, 42 U.S.C. § 7408. The primary NAAQS are to be adequate to protect the public health with an adequate margin of safety, and the secondary NAAQS are to be adequate to protect the public welfare, from any

known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

13. Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is termed an "attainment" area. An area that does not meet the NAAQS is termed a "nonattainment" area. An area that cannot be classified due to insufficient data is termed "unclassifiable."

14. At times relevant to this complaint, Big Cajun II which is the subject of this action has been located in an area that had been classified as attainment for $SO_2$ and unclassifiable-attainment for NOx.

15. Pursuant to 42 U.S.C. § 7410, each State must adopt and submit to EPA for approval a State Implementation Plan ("SIP") that provides for the attainment and maintenance of the NAAQS. The State of Louisiana has adopted a SIP that has been approved by EPA. 40 C.F.R. Part 52, Subpart T.

The Prevention of Significant Deterioration Requirements

16. Part C of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the

- 4 -

Case 3:09-cv-00100-JJB-DLD    Document 1    02/18/09    Page 4 of 20

consequences of such a decision and after public participation in the decision making process. 42 U.S.C. § 7470. These provisions are referred to herein as the "PSD program."

17. Section 161 of the Act, 42 U.S.C. § 7471, requires that each applicable SIP contain a PSD program. On April 24, 1987, EPA approved a revision to the Louisiana SIP which provides for State issuance and enforcement of permits to prevent the significant deterioration of air quality. 52 *Fed. Reg.* 13671. EPA also has approved subsequent revisions to Louisiana's PSD regulations. 40 C.F.R. §§ 52.970(c) and 52.999(c). The PSD program in the Louisiana SIP is codified at the Louisiana Administrative Code ("LAC") 33:III.509.

18. Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the construction and operation of a "major emitting facility" in an area designated as attainment or unclassifiable unless a permit has been issued that comports with the requirements of Section 165 and the facility is subject to BACT for each pollutant subject to regulation under the Act that is emitted from the facility. Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates fossil-fuel fired steam electric plants of more than 250 million British thermal units ("BTUs") per hour heat input and that emit or have the potential to emit 100 tons per year ("tpy") or more of any pollutant to be "major emitting facilities."

19. Section 169(2) of the Act, 42 U.S.C. § 7479(2), defines "construction" as including "modification" (as defined in Section 111(a) of the Act). "Modification" is defined in Section 111(a) of the Act, 42 U.S.C. § 7411(a), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

- 5 -

20. Applicable provisions in the PSD regulations in the Louisiana SIP have at all relevant times prohibited a major stationary source from constructing or operating a major modification in an area designated as attainment or unclassified without, among other things, first obtaining a PSD permit, undergoing a BACT determination, and applying BACT pursuant to such determination for each relevant pollutant. LAC 33:III.509.B, 509.I, 509.J.3, 509.R (which correspond to 40 C.F.R. §§ 52.21(b)(12), 52.21(j), 52.21(r)(1)). The definitions contained in the PSD regulations in the Louisiana SIP have at all relevant times defined "major modification" to include "a physical change in or change in the method of operation of a major stationary source that would result in a significant net emissions increase of any pollutant subject to regulation under [the Clean Air Act]." LAC 33:III.509.B (which corresponds to 40 C.F.R. § 52.21(b)(2)(i)). The regulations have at all relevant times defined "major stationary source" to include fossil fuel-fired steam electric plants of more than 250 million BTUs per hour heat input. LAC 33:III.509.B (which corresponds to 40 C.F.R. § 52.21(b)(1)(i)).

Title V

21. Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources." The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Act, including PSD requirements, are collected in one place.

22. Louisiana's Title V operating permit program was granted full approval by EPA on September 12, 1995 (60 *Fed. Reg.* 47296, effective October 12, 1995). Louisiana's Title V operating permit program is found at LAC 33:III Chapter 5.

23. Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and the Louisiana Title V operating permit program have at all relevant times made it unlawful for any person to violate any requirement of a permit issued under Title V, or to operate a Part 70 source except in compliance with a permit issued by a permitting authority under Title V.

24. Section 503(c) of the Act, 42 U.S.C. § 7661b(c), provides that any person required to have a permit must submit to the permitting authority a compliance plan describing how the source will comply with all applicable requirements, and an application for a permit signed by a responsible official who must certify the accuracy of the information submitted.

25. Section 504(a) of the Act, 42 U.S.C. § 7661c(a), implementing regulations of the Act, 40 C.F.R. Part 70, and the Louisiana Title V operating permit program regulations have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Clean Air Act, including any applicable PSD requirement to comply with an emission rate that meets BACT.

26. The Louisiana Title V operating permit program regulations require that a source submit a timely and complete permit application which, among other things, identifies all applicable requirements (including any requirement to meet BACT pursuant to PSD), certifies compliance with all applicable requirements, and contains a compliance plan for all applicable requirements for which the source is not in compliance. LAC 33:III.501.C, 517.C and 517.D (which correspond to 40 C.F.R. § 70.5).

27. The Louisiana Title V operating permit program regulations require that any permit issued must incorporate all federally applicable requirements. No construction,

Case 3:09-cv-00100-JJB-DLD    Document 1    02/18/09    Page 7 of 20

modification, or operation of a facility which ultimately may result in an initiation or increase in emissions may begin until a permit has been approved and issued by LDEQ. LAC 33:III.501.C, 517.A.3, and 517.B.2 (which correspond to 40 C.F.R. § 70.6).

## ENFORCEMENT PROVISIONS

28. Sections 113(a)(1) and (3) of the Act, 42 U.S.C. § 7413(a)(1) and (3), provide that the Administrator may bring a civil action in accordance with Section 113(b) of the Act whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of, *inter alia*, (1) the Prevention of Significant Deterioration requirements of Section 165(a) of the Act, 42 U.S.C. § 7475(a); (2) Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or (3) the Louisiana SIP or any permit issued thereunder.

29. Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; up to $27,500 per day for each such violation occurring between January 31, 1997 and March 15, 2004; $32,500 for each such violation occurring between March 15, 2004 and January 12, 2009; and $37,500 for each such violation occurring after January 12, 2009; pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, against any person whenever such person has violated, or is in violation of, *inter alia,* the requirements or prohibitions described in the preceding paragraph.

30. Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator to initiate an action for injunctive relief, as necessary to prevent the construction or modification of a major emitting facility which does not conform to the PSD requirements in Part C of the Act.

## DEFENDANT'S COAL-FIRED GENERATING UNITS

31. The defendant is the owner and operator of the Big Cajun II Power Plant, a fossil fuel fired electric utility steam generating plant that consists of three units, known as Units 1, 2, and 3 located in New Roads, Louisiana. Big Cajun II Units 1 and 2 were initially permitted in 1976, but began operation in 1981.

32. Cajun Electric Power Cooperative, Inc. ("Cajun Electric") is the former owner and operator of Big Cajun II. In 1994, Cajun Electric filed a Chapter 11 petition in the United States Bankruptcy Court for the Middle District of Louisiana ("Bankruptcy Court").

33. In November 1996, Cajun Electric wrote to LDEQ that the company had operating problems with the boilers at Big Cajun II, Units 1 and 2 from the time they began operation in 1981. As a result of repairs to the pulverizers and boiler combustion chambers, the company stated that the boilers were able to generate steam output equivalent to their original maximum heat input capacity of 5863 million BTU/per hour. Cajun Electric also stated that in 1994 and 1995 it replaced certain turbine components at Big Cajun II, Units 1 and 2.

34. In the fall of 1998, Cajun Electric replaced major portions of the primary and high-temperature boiler reheater with new pre-fabricated tube bundles at Unit 1 of the Big Cajun II Power Plant at an estimated cost of $5,000,000.

35. In the spring of 1999, Cajun Electric replaced major portions of the primary and high-temperature boiler reheater with new pre-fabricated tube bundles at Unit 2 of the Big Cajun

II Power Plant at an estimated cost of $5,000,000. At or near the time the reheater elements were replaced at Unit 2, other construction projects also were performed, including the replacement of waterwall panels.

36. In September 1999, Cajun Electric wrote to LDEQ that Big Cajun II, Units 1 and 2, had "higher operating capacity in 1999."

37. In March 2000, Cajun Electric reported to the LDEQ as part of its annual Criteria Pollutant Emissions Certification Statement that for reporting year 1999 the boilers at Units 1 and 2 of Big Cajun II had a maximum heat input capacity of 6420 million BTU/per hour.

38. In February 2000, Cajun Electric reported to the United States Energy Information Administration ("EIA") on Form EIA-860 that for reporting year 1999 Big Cajun II Units 1 and 2 each had a maximum generator nameplate capacity of 611 megawatts ("MW"). In May 2001, the defendant reported to the EIA on Form EIA-860 that for reporting year 2000 Big Cajun II Unit 1 had a maximum generator nameplate capacity of 638 MW, and that Big Cajun II Unit 2 had a maximum generator nameplate capacity of 632.5 MW.

39. On September 21, 1999, the defendant, NRG Energy, and Ralph R. Mabey, as Chapter 11 Trustee of Cajun Electric, entered into a Fifth Amended and Restated Asset Purchase and Reorganization Agreement ("Asset Purchase Agreement"). Pursuant to the Asset Purchase Agreement, the defendant acquired substantially all of the assets of Cajun Electric (section 2.1) and assumed any environmental liabilities that attached to the owner of the acquired assets, including Big Cajun II, by operation of law (section 2.4).

40. On October 14, 1999, the Bankruptcy Court confirmed Cajun Electric's Second Amended and Restated Creditors' Plan of Reorganization ("Reorganization Plan"). As part of the Reorganization Plan, the Bankruptcy Court approved the Asset Purchase Agreement.

41. On March 10, 2000, the defendant filed a certificate with the Secretary of State of Louisiana authorizing it to do business in the State of Louisiana.

42. On March 17, 2000, the defendant and Cajun Electric notified LDEQ regarding Cajun Electric's intent to transfer its environmental permits to the defendant pursuant to the terms of the Asset Purchase Agreement. As part of that notification, the defendant certified and accepted responsibility, coverage, and liability for the permits and permit application of Big Cajun II. On March 30, 2000, LDEQ approved the change in ownership of Big Cajun II from Cajun Electric to Louisiana Generating.

43. Beginning on April 1, 2000, the defendant became the owner and operator of the assets formerly owned by Cajun Electric, including Big Cajun II and Cajun Electric's other generation assets.

44. On September 14, 2001, the defendant submitted a revised Title V permit application for the Big Cajun II facility to LDEQ. The defendant submitted supplemental information to LDEQ dated October 4, December 17, and December 26, 2001; March 14 and July 1, 2002; July 31, 2003; August 11, 2004; and March 30, 2005.

45. The defendant's Title V application, as supplemented, was not complete because it failed to identify and describe all applicable requirements and other specific information that may be necessary to implement and enforce applicable requirements of the Act or to determine the applicability of such requirements, including, but not limited to, a description of the reheater

- 11 -

Case 3:09-cv-00100-JJB-DLD   Document 1   02/18/09   Page 11 of 20

modifications performed in 1998 and 1999 and a plan and compliance schedule for determining and complying with BACT at Big Cajun II, Units 1 and 2. The defendant's Title V application also did not include the relevant requirements of Section 165(a) of the Act, 42 U.S.C. § 7475(a) and L.A.C. 33:III.509J - O for Units 1 and 2.

46. On August 22, 2005, LDEQ issued a Title V permit (Permit No. 2260-00012-VO) to Big Cajun II. Because of the deficient application, the Title V permit does not require the defendant to comply with all applicable federal and Louisiana requirements with respect to the determination and installation of BACT at Big Cajun II, Units 1 and 2.

47. At all times relevant to this complaint, the Big Cajun II Power Plant was a "major emitting facility" and "major stationary source," within the meaning of the Act and the PSD regulations in the Louisiana SIP for NOx and/or $SO_2$. At all times relevant to this complaint, the Big Cajun II Plant was a "major source" within the meaning of Title V of the Act and the Louisiana Title V program regulations.

## FIRST CLAIM FOR RELIEF

(PSD Violations at the Big Cajun II Plant, Unit No. 1)

48. Paragraphs 1 through 47 are realleged and incorporated herein by reference.

49. In 1998, Cajun Electric commenced construction of one or more major modifications, as defined in the Act and the Louisiana SIP, at the Big Cajun II Plant without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Unit No. 1 of the Big Cajun II Plant, including the replacement of major portions of the primary and high-temperature boiler reheater at Unit No. 1. These modifications resulted in significant net emissions increases, as defined by the

relevant PSD regulations, of $SO_2$ and/or $NO_X$. LAC 33:III.509.B (which corresponds to 40 C.F.R. § 52.21(b)(2), (b)(3), and (b)(23).

50. Since April 1, 2000, the defendant has owned and operated Unit 1 of the Big Cajun II Plant without having or seeking a PSD permit covering the major modifications identified in paragraph 49.

51. The defendant has not complied with the PSD requirements in the Louisiana SIP with respect to the major modifications at Big Cajun II. Among other things, the defendant has failed to obtain a PSD permit as required by the Louisiana SIP prior to operation of the major modifications at Unit 1 of Big Cajun II. LAC 33:III.509.I (which corresponds to 40 C.F.R. § 52.21(i). As a result, the defendant failed to comply with the PSD requirements of LAC 33:III.509.J-O (which correspond to 40 C.F.R. §§ 52.21(j) - (o), including the requirement to apply BACT for control of $NO_x$ and $SO_2$ at Unit 1 of Big Cajun II.

52. The defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD provisions of the Louisiana SIP, LAC 33:III.509, at Unit 1 of Big Cajun II. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

53. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject the defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring between January 31, 1997 and March 15, 2004; $32,500 for each such violation occurring between March 15, 2004 and January 12, 2009; and $37,500 for each such violation occurring after January 12,

- 13 -

Case 3:09-cv-00100-JJB-DLD   Document 1   02/18/09   Page 13 of 20

2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## SECOND CLAIM FOR RELIEF

(Title V Violations at Big Cajun II Plant, Unit No. 1)

54. Paragraphs 1 through 53 are realleged and incorporated herein by reference.

55. As set forth above, the defendant commenced construction or operation of one or more major modifications at Big Cajun II, Unit No. 1, as defined under the PSD regulations in the Louisiana SIP. As a result, these modifications triggered the requirements to, *inter alia,* obtain a PSD permit establishing emissions limitations that meet BACT and operate in compliance with BACT. The defendant failed to satisfy these requirements.

56. The defendant failed to submit a complete application for a Title V operating permit for Big Cajun Unit No. 1 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a new BACT determination under PSD), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, or to determine the applicability of such requirements.

57. The defendant has failed to obtain a proper or adequate Title V operating permit for Big Cajun II that contains emission limitations for $NO_x$ and/or $SO_2$ at Unit 1 that meet BACT pursuant to a new BACT determination. The defendant thereafter has operated Big Cajun Unit No. 1 without meeting such limitations and without having an adequate operating permit that

requires compliance with such limitations or that contains a compliance plan for all applicable requirements for which the source is not in compliance.

58. The defendant's conduct has violated and continues to violate Sections 502(a), 503(c), and 504(a) of the Act, 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-70.6, and the Louisiana Title V operating permit program regulations. LAC 33:III.507, 517. Unless restrained by an order of this Court, these and similar violations will continue.

59. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject the defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring between January 31, 1997 and March 15, 2004; $32,500 for each such violation occurring between March 15, 2004 and January 12, 2009; and $37,500 for each such violation occurring after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

### THIRD CLAIM FOR RELIEF

(PSD Violations at the Big Cajun II Plant, Unit No. 2)

60. Paragraphs 1 through 59 are realleged and incorporated herein by reference.

61. In 1999, Cajun Electric commenced construction of one or more major modifications, as defined in the Act and the Louisiana SIP at the Big Cajun II Plant without applying for or receiving a PSD permit. These modifications included one or more physical changes or changes in the method of operation at Unit No. 2 of the Big Cajun II Plant, including the replacement of major portions of the primary and high-temperature boiler reheater at Unit No. 2. These modifications resulted in significant net emissions increases, as defined by the

relevant PSD regulations for one or more of the following: $SO_2$ and $NO_X$. LAC 33:III.509.B (which corresponds to 40 C.F.R. § 52.21(b)(2), (b)(3), and (b)(23)).

62. Since April 1, 2000, the defendant has owned and operated Unit 2 of the Big Cajun II Plant without seeking a PSD permit for the major modifications identified in paragraph 61.

63. The defendant has not complied with the PSD requirements in the Louisiana SIP with respect to the major modifications at Unit 2 of Big Cajun II. Among other things, the defendant has failed to obtain a PSD permit as required by the Louisiana SIP prior to operation of the major modifications at Unit 2 of Big Cajun II. LAC 33:III.509.I (which corresponds to 40 C.F.R. § 52.21(i). As a result, the defendant failed to comply with the PSD requirements of LAC 33:III.509.J-O (which correspond to 40 C.F.R. §§ 52.21(j) - (o), including the requirement to apply BACT for control of $NO_x$ and/or $SO_2$ at Unit 2 of Big Cajun II.

64. The defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD provisions of the Louisiana SIP, LAC 33:III.509, at Big Cajun II. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

65. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject the defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring between January 31, 1997 and March 15, 2004; $32,500 for each such violation occurring between March 15, 2004 and January 12, 2009; and $37,500 for each such violation occurring after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## FOURTH CLAIM FOR RELIEF

(Title V Violations at Big Cajun II Plant, Unit No. 2)

66. Paragraphs 1 through 65 are realleged and incorporated herein by reference.

67. As set forth above, the defendant commenced construction or operation of one or more major modifications at Big Cajun II, Unit No. 2, as defined under the PSD regulations in the Louisiana SIP. As a result, these modifications triggered the requirements to, *inter alia,* obtain a PSD permit establishing emissions limitations that meet BACT and operate in compliance with BACT. The defendant failed to satisfy these requirements.

68. The defendant failed to submit a complete application for a Title V operating permit for Big Cajun Unit No. 2 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a new BACT determination under PSD), and other specific information that may be necessary to implement and enforce the applicable requirements of the Act, Title V, or to determine the applicability of such requirements.

69. The defendant has failed to obtain a proper or adequate Title V operating permit for Big Cajun II that contains emission limitations for $NO_x$ and/or $SO_2$ at Unit 2 that meet BACT pursuant to a new BACT determination. The defendant thereafter has operated Big Cajun Unit No. 2 without meeting such limitations and without having an adequate operating permit that requires compliance with such limitations or that contains a compliance plan for all applicable requirements for which the source is not in compliance.

70. The defendant's conduct has violated and continues to violate Sections 502(a), 503(c), and 504(a) of the Act, 42 U.S.C. §§ 7661a(a),7661b(c), and 7661c(a), 40 C.F.R. §§ 70.5-70.6, and the Louisiana Title V operating permit program regulations. LAC 33:III.507, 517. Unless restrained by an order of this Court, these and similar violations will continue.

71. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject the defendant to injunctive relief and civil penalties of up to $27,500 per day for each such violation occurring between January 31, 1997 and March 15, 2004; $32,500 for each such violation occurring between March 15, 2004 and January 12, 2009; and $37,500 for each such violation occurring after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon all the allegations set forth above, the United States of America requests that this Court:

1. Permanently enjoin the defendant from operating Units 1 and 2 of the Big Cajun II Power Plant, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2. Order the defendant to remedy its past violations by, among other things, requiring the defendant to install and operate, as appropriate, BACT at Units 1 and 2 of the Big Cajun Power Plant, for each pollutant subject to regulation under the Clean Air Act;

3. Order the defendant to apply for permits that are in conformity with the requirements of the PSD and the Louisiana Title V Operating Permits program;

4. Order the defendant to conduct audits of its operations to determine if any additional modifications have occurred which would require it to meet the requirements of PSD and report the results of these audits to the United States;

5. Order the defendant to surrender emission allowances or credits to offset and mitigate the illegal emissions under the PSD and the Louisiana Title V Operating Permits program;

6. Order the defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

7. Assess a civil penalty against the defendant of up to $27,500 per day for each violation of the Clean Air Act and applicable regulations which occurred between January 31, 1997 and March 15, 2004; $32,500 for each violation that occurred between March 15, 2004 and January 12, 2009; and $37,500 for each violation occurring after January 12, 2009;

8. Award the United States its costs of this action; and,

9. Grant such other relief as the Court deems just and proper.

Dated: February 11, 2009

Respectfully submitted,

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources
  Division
United States Department of Justice

Case 3:09-cv-00100-JJB-DLD   Document 1   02/18/09   Page 19 of 20

*Richard Gladstein* (signature)

RICHARD GLADSTEIN, T.A.
Senior Counsel, D.C. Bar No. 362404
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-1711
Fax: (202) 514-8395
Email: Richard.Gladstein@usdoj.gov

DAVID R. DUGAS
UNITED STATES ATTORNEY

s/ John J. Gaupp
John J. Gaupp, LBN: 14976
ASSISTANT U.S. ATTORNEY
777 Florida St., Suite 208
Baton Rouge, LA 70801
Telephone: (225) 389-0443
Facsimile: (225) 389-0685
E-mail: john.gaupp@usdoj.gov

CHERYL BARNETT
Assistant Enforcement Counsel
U.S. EPA, Region 6
1445 Ross Avenue
Dallas, Texas 75202

ILANA S. SALTZBART
Attorney-Advisor
U.S. EPA
1200 Pennsylvania Ave., N.W. (2242A)
Washington, D.C. 20460