UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>LOUISIANA DEPARTMENT OF ENVIRONMENTAL QUALITY,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>LOUISIANA GENERATING, LLC,<br><br>Defendant. | Civil Action No. 09-CV-100-JJB-DD |

## PROPOSED UNIFORM PRETRIAL ORDER

Pursuant to Rule 16 of the Federal Rule of Civil Procedure, a pretrial conference was conducted in this proceeding by James J. Brady, United States District Judge, on the 20th day of August, 2012.

    PRESENT:    Appeared as Trial Counsel for Plaintiffs:

                Richard M. Gladstein (DCN 362404)
                Environmental Enforcement Section
                Environment and Natural Resources Division
                U.S. Department of Justice
                P.O. Box 7611, Ben Franklin Station
                Washington, D.C. 20044

                Dwana C. King, Trial Attorney (LA #20590)
                Louisiana Department of Environmental Quality
                P. O. Box 4302
                Baton Rouge, Louisiana 70821-4302

Appeared as Trial Counsel for Defendant:

> David Super (admitted *pro hac vice*)
> Baker Botts L.L.P.
> 1299 Pennsylvania Ave., N.W.
> Washington, D.C. 20004-2400
>
> James P. Doré
> Kean Miller LLP
> 400 Convention Street, Suite 700
> Baton Rouge, Louisiana 70802
>
> Kent Mayo (admitted *pro hac vice*)
> Baker Botts L.L.P.
> 1299 Pennsylvania Ave., N.W.
> Washington, D.C. 20004-2400

The Court has subject matter jurisdiction in this proceeding under the provisions of 28 U.S.C. § 1331. This Court has original jurisdiction of all civil actions, such as this one, arising under the Clean Air Act, 42 U.S.C § 7401 *et seq*.

## 2. MOTIONS

The following motions are pending and have been submitted to the Court for resolution:

| Date Filed | Motion | Doc. Nos. | Status |
| --- | --- | --- | --- |
| 2/04/11 | Plaintiffs' Motion for Partial Summary Judgment: BCII Units 1 & 2 Reheater Projects Do Not Qualify for the Routine Maintenance Exception | 132, 134, 141, 144, 158-163, 171, 178, 232, 247, 253 | Pending |
| 2/04/11 | Plaintiffs' Motion for Partial Summary Judgment: Applicable Legal Test for Routine Maintenance Exception | 133, 135, 142, 145, 157, 164, 177, 231, 248, 252 | Pending |
| 2/04/11 | Defendant's Motion for Summary Judgment: Applicable Legal Test for Routine Maintenance Exception | 140, 152, 165, 166, 180, 250 | Pending |

| 4/18/11 | Plaintiffs' Motion in Limine to Exclude Testimony of Weiss & Barrett | 187, 209, 212 | Pending |
| --- | --- | --- | --- |
| 4/18/11 | Plaintiffs' Motion in Limine to Exclude Testimony of Chupka | 188, 211, 213, 234, 240, 241, 255, 256 | Pending |
| 4/18/11 | Defendant's Motion in Limine to Exclude Certain Evidence and Issues Related to Remedy | 189, 204, 217 | Pending |
| 4/18/11 | Defendant's Motion in Limine to Exclude Testimony of Venner | 190, 208, 214, 221, 222, 242 | Pending |
| 4/18/11 | Defendant's Motion in Limine to Exclude Testimony of Larkin | 191, 192, 205, 215, 235 | Pending |

### 3. PLAINTIFFS' CLAIMS

This is a civil action brought against Louisiana Generating, LLC ("LaGen" or "defendant") by the United States and the Louisiana Department of Environmental Quality ("LDEQ") pursuant to Sections 113(b) and 167 of the Clean Air Act ("the Act"), 42 U.S.C. § 7413(b) and 7477, for injunctive relief and the assessment of civil penalties for violations of the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-92; the federally approved Louisiana PSD regulations of the Louisiana State Implementation Plan ("SIP"); Title V of the Act, 42 U.S.C. §§ 7661-7661f, the federally approved Louisiana Title V program, or any rule or permit issued thereunder.

Defendant LaGen is the owner and operator of the Big Cajun II electric generating station located in New Roads, Louisiana, the largest source of air pollution in the State of Louisiana. The primary reheaters were the leading cause of forced outages at Big Cajun II Units 1 and 2 before 1998 and 1999, forcing the units out of service for days at a time and preventing the units from operating reliably. During month-long outages in the fall of 1998 and spring of 1999, Cajun Electric Power Co-operative ("Cajun Electric")—LaGen's predecessor in interest—completely replaced the primary reheaters in Big Cajun II Units 1 and 2, without first obtaining the required preconstruction permits and installing Best Available Control Technology ("BACT") in violation of the PSD provisions of the Act, the Title V Operating Permit program, and the Louisiana SIP. These $5 million capital improvement projects, undertaken after years of engineering assessments and independent analysis, were unprecedented in their size and cost in the operating history of the plant.

After the reheater projects were completed, Big Cajun II Units 1 and 2 were available to operate many more hours per year. This Court has determined that Big Cajun II Units 1 and 2

operated virtually whenever they were available, and are therefore baseload units.[1] Consequently, it is reasonable to presume that the increased hours of operation were likely to result in increased burning of coal, generation of electricity, and significantly increased air pollution. Without the required pollution controls, this air pollution has significantly harmed and continues to harm to public health and the environment.

Plaintiffs allege that this work constituted illegal "modifications" under the PSD provisions of the Act. The term "modification" is defined by the Act to mean a "physical change" that will result in an "increase" in air pollution. Despite the extensive cost and scope of the Big Cajun II reheater projects, LaGen claims that the work is excluded from being a modification because it is "routine maintenance, repair or replacement." However, LaGen cannot satisfy its burden to establish that the reheater projects qualify for the narrow routine maintenance exemption. Indeed, the central facts concerning these projects are not disputed.[2] Accordingly, pursuant to Federal Rule of Civil Procedure 56, Plaintiffs have asked the court to issue an order on summary judgment that the Big Cajun II reheater replacement projects were not "routine maintenance, repair or replacement" as a matter of law.

As the owner and operator of Big Cajun II, LaGen is responsible for complying with the applicable PSD and Title V requirements of the Act, federal regulations, the Louisiana SIP, and the Louisiana Operating Permit program for the Big Cajun II facility. LaGen purchased Big Cajun II from Cajun Electric pursuant to the Fifth Amended and Restated Asset Purchase and Reorganization Agreement between LaGen, Ralph R. Mabey, as Chapter 11 Trustee of Cajun Electric, and NRG Energy, Inc. ("NRG") ("Fifth Amended Asset Purchase Agreement") on September 21, 1999. Under the Asset Purchase Agreement, LaGen acquired substantially all of the assets of Cajun Electric and expressly assumed any environmental liabilities that attached to the owner of the acquired assets, including Big Cajun II, by operation of law. While the major modifications at issue were undertaken at Big Cajun II Unit 1 in 1998 and Unit 2 in 1999, LaGen assumed legal and contractual responsibility for and has continued to operate and receive the benefit of those modifications for the last decade. LaGen also is liable under Title V of the Act and the Louisiana Operating Permits program since it has failed to submit a complete Title V application for an operating permit that includes a compliance plan for implementing BACT resulting from the reheater projects, and has operated Big Cajun II Units 1 and 2 without a proper or adequate Title V operating permit.

---

[1] Plaintiffs' disagree with LaGen's claim that the Court's ruling in its May 14, 2012 Order (Dkt. No. 298) "did not establish any facts that are binding for purposes of the parties' trial presentation." In that Order, this Court held that "these units must be baseload units as they are used to meet their base demand. . . . As the testimony at the hearing was to the effect that BCII units 1 and 2 operate whenever they are available, the Court finds this qualifies as 'vitually continuously' under *Cinergy* and that the plants are therefore considered baseload under that case." Order at 8-9. This conclusion constitutes the law of the case and precludes LaGen from relitigating this issue. *See Uspps, LTD v. Avery Dennison Corp.*, 647 F. 3d 274, 282-284 (5th Cir. 2011); *Morrow v. Dillard*, 580 F. 2d 1284 1290-1291 (5th Cir. 1978).

[2] LaGen contends that this Court should not grant Plaintiffs' Motion for Partial Summary Judgment: BCII Units 1 & 2 Reheater Projects Do Not Qualify for the Routine Maintenance Exception (Dkt. No. 132), claiming that there are clear disputes on the factual issues and expert testimony. Plaintiffs disagree. LaGen's own purported expert on "routine maintenance" , Jerry Golden, gave no consideration in forming his opinion to the different projects referred to by LaGen. In addition, Mr. Golden could find only 16 other reheater replacement projects of comparable size and cost that had been performed at the time on more than 1200 units across the United States.

DC01:660124.1 4

Case 3:09-cv-00100-JJB-DLD   Document 300   08/06/12   Page 4 of 18

## 4. DEFENDANT'S CLAIMS

LaGen is not asserting any claims for relief in this case.

LaGen disputes each of Plaintiffs' claims and allegations and will oppose those claims and allegations at trial. LaGen states the following in response to Plaintiffs' description of their claims for liability.

LaGen has been the owner and operator of Units 1 and 2 at the Big Cajun II power plant in Point Coupee Parish since April 1, 2000. LaGen uses Big Cajun II to supply power to Louisiana electric cooperatives that distribute electricity to more than 350,000 households across 48 Louisiana parishes. The claims in this lawsuit arise from work completed by the prior plant owner, Cajun Electric Power Cooperative, Inc. ("Cajun Electric"). In 1998 at Unit 1, and in 1999 at Unit 2, Cajun Electric replaced the tube assemblies in the primary reheater section of the boilers in those units (the "Projects").

In order for Plaintiffs to prove their claims that the Projects were conducted in violation of PSD requirements, Plaintiffs must demonstrate that each Project constituted a "major modification" subject to PSD permitting obligations. A "major modification" requires (1) a "physical change" (2) that results in a significant net emission increase of sulfur dioxide ("$SO_2$") and nitrogen oxides ("NOx").

Plaintiffs cannot meet their burden to show that either of Cajun Electric's Projects qualified as a "major modification" that triggered PSD obligations with respect to $SO_2$ or NOx. As a threshold matter, Cajun Electric's Projects each constituted routine maintenance, repair and replacement ("RMRR"). Because RMRR activities are expressly excluded from the definition of "physical change," the Projects were not "major modifications" that triggered PSD obligations. The Projects were part of the wide range of maintenance, repair and replacement activities Cajun Electric performed on an ongoing basis to maintain the reliability of Units 1 and 2. Cajun planned and budgeted the Projects consistent with its regular business procedures, performed the Projects in a regularly scheduled planned annual maintenance outage, and replaced the old primary reheater tubes with "like-kind" new tubes that did not change the function of the primary reheater. At the time the Projects were planned and performed, such boiler tube replacement activities were understood by Cajun Electric and the rest of the electric utility industry to be RMRR activities not subject to PSD requirements based on how EPA had implemented the PSD program up to that date. In fact, just a short time before the Projects were planned and performed, LDEQ confirmed in writing with respect to similar projects at Units 1 and 2 that Cajun Electric's understanding of the RMRR exclusion was correct. Given the multiple material factual questions inherent in the RMRR evaluation, the parties' clear dispute on the factual issues, and the competing expert testimony on this issue, Plaintiffs' pending motion for summary judgment should be rejected and the issues addressed by the finder of fact.

Because the Projects were RMRR and thus could not have been "major modifications," there is no further requirement to consider the emissions prong of the major modification

DC01:660124.15

Case 3:09-cv-00100-JJB-DLD   Document 300   08/06/12   Page 5 of 18

definition. However, Plaintiffs also have not met their burden to demonstrate that each Project should have been expected to cause a significant emissions increase of both $SO_2$ and $NOx$. Plaintiffs' method of predicting emissions increases contradicts the real-world projection methodologies used by power plant operators like Cajun Electric and ignores factors that can and do affect future operations and emissions significantly.[3] Plaintiffs' own methodology shows no significant emissions increase of $SO_2$ or $NOx$ emissions for either Project when more appropriate inputs are used.

Even if it were determined that Cajun Electric should have sought a PSD permit before performing the Projects, LaGen is not responsible for Cajun Electric's conduct. Plaintiffs cannot show, as required under this Court's December 1, 2011 Order, that LaGen knew or reasonably expected that the Projects created PSD liability at the time LaGen signed the contract to acquire the relevant assets at Big Cajun II given the information available during the relevant period.

LaGen also disputes Plaintiffs' Title V claims. LaGen performed a reasonable inquiry regarding the truth, accuracy and completeness of its Title V permit application prior to submitting that application without including a reference to alleged PSD applicability arising from the Projects. *See* Court's December 1, 2011 Order at 26.

Finally, LaGen notes that this action has been bifurcated and the present phase addresses only questions of liability. Therefore, all defenses and arguments regarding possible remedies are preserved for a future remedy phase, should one be necessary. Notwithstanding this bifurcation, Plaintiffs have included in past submissions, and in their statement of Plaintiffs' Claims above, prejudicial assertions regarding alleged harm and potential remedies that have no bearing on the liability issues to be presented to the jury at the upcoming trial ("Without the required pollution controls, this air pollution has significantly harmed and continues to harm public health and the environment."). LaGen has asked the Court to preclude such statements or evidence at the liability trial in its pending Motion in Limine to Exclude Certain Evidence and Issues Related to Remedy. *See* Doc. Nos. 189, 204, 217.

## 5. CLAIMS OF OTHER PARTIES

None.

---

[3] LaGen disagrees with Plaintiffs' contention in their Statement of Claims that this Court made a final factual determination or finding regarding the operation or status of Units 1 and 2 as "baseload" units that is binding at the trial stage. The Court's ruling in its May 14, 2012 Order (Dkt. No. 298), regarding expert challenges addressed only the threshold issue of whether Plaintiffs' emissions experts could provide testimony at trial and did not establish any facts that are binding for purposes of the parties' trial presentation. *See, e.g., Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, 2002 WL 1751381, at *33 (N.D. Tex. April 4, 2002) (notwithstanding court's findings in denying *Daubert* motion, movant "may still attempt to demonstrate at trial" the substance of its challenge against non-movant's expert); *See also Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("It bears reminding that 'the trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' Rather, as Daubert makes clear, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'").

## 6. ESTABLISHED FACTS

*See* Stipulation of Established Facts (Attachment A).

## 7. EXHIBITS

(a). The plaintiffs will offer the following exhibits at trial:

*See* Plaintiffs' Exhibit List (Attachment B).

(b). The defendant will offer the following exhibits at trial:

*See* Defendant's Exhibit List (Attachment C).

The parties have worked together in good faith in advance of submission of the Pre-Trial Order to identify and resolve potential objections to the authenticity of exhibits identified on the parties' exhibit lists. These efforts, which included multiple telephone discussions and an in-person meeting of counsel, have resulted in the narrowing of potential objections. The parties intend to continue their efforts to minimize such objections prior to the pre-trial conference scheduled for August 20, 2012. The parties have scheduled additional discussions before the August 20 conference to attempt to resolve the remaining objections, including potential disputes regarding appropriate document boundaries and agreed-upon versions of public documents.

The parties also have agreed on a procedure for asserting objections, if any, regarding the authenticity of any handwritten notes and marginalia ("Notes") contained in exhibits as to which there is otherwise no authenticity objection. Subject to that procedure, at this time, the parties are not stipulating to the authenticity of any Notes contained in any proposed exhibit. The parties agree to identify by August 13, 2012, any such Notes contained in their own exhibits that they view as an integral part of the exhibit, and the other side will have until August 16, 2012, to assert an objection as to the authenticity of such Notes. For any Notes that are not designated as

an integral part of the exhibit, the proponent of the exhibit agrees to not discuss or otherwise focus on such Notes in the event that the exhibit is admitted as evidence or is used in any other manner at trial, and the opposing party agrees to not assert any objection as to the authenticity of that exhibit.

At the pre-trial conference on August 20, the parties wish to discuss with the Court the preferred procedure for resolving any remaining objections to authenticity. In addition, the parties recognize that objections, if any, to the admissibility of exhibits need not be addressed in the pretrial order, but will instead be presented to the Court in a manner and at a time to be set by the Court at the pretrial conference. Toward that end, the parties have agreed to exchange preliminary objections to the admissibility of exhibits by August 16, 2012. The parties wish to discuss with the Court the timing and procedure for addressing objections to exhibits on admissibility or other grounds at the August 20 conference.

## 8. WITNESSES[4]

(a). Plaintiffs' Witnesses:

| WILL CALL WITNESSES | | |
|---|---|---|
| **Name & Address** | **Statement of Testimony** | **Deposition/Live** |
| Myron Adams<br>3115 River Mill Drive<br>Columbus, OH 43220 | Mr. Adams is a retired resource planner at one of the largest utilities in the nation who will testify as an expert based on a review of company documents, including cost benefit analyses, provided by LaGen that the company expected to reduce forced outages and generate more electricity per year as a result of the primary reheater replacement projects. | Live |

---

[4]The witness lists include which, if any, of the witnesses will testify by written or videotape depositions.

| | | |
|---|---|---|
| Robert S. Evans II<br>Excelsior Energy, Inc.<br>10900 Wayzata Blvd., Suite 200<br>Minnetonka, MN 55305 | Mr. Evans, a former Corporate Director of Environmental Services for NRG, will testify about his due diligence investigation of environmental issues at Big Cajun II before LaGen and NRG bought the plant. | written or videotape deposition |
| Michael Hekking<br>135 Vallee Drive<br>Central, SC 29630 | Mr. Hekking is a former coal-fired plant manager who will testify as an expert about how a coal-fired plant operates, the maintenance that is typically done on boilers, and the work done to replace the primary reheaters. | Live |
| Robert Koppe<br>5436 Old Stage Road<br>Boulder, CO 80302 | Mr. Koppe is a utility engineer who will testify as an expert based on documentation, including historical operational data, provided by LaGen that the primary reheaters were the primary cause of boiler outages during the time period before the primary reheaters were replaced at Big Cajun II. Mr. Koppe will testify that by replacing the primary reheaters, the company expected that Big Cajun II Units 1 and 2 would be more available, more reliable, and generate more electricity per year. | Live |
| David Lloyd<br>US EPA Region 4<br>61 Forsyth Street, S.W.<br>Atlanta, GA 30303 | Mr. Lloyd will testify about his inspection of the Big Cajun II facility in the fall of 2993. Mr. Lloyd will testify about how the PSD and Title V permitting programs work and how EPA interprets the PSD and Title V regulations. Mr. Lloyd also will testify about how the PSD and Title V regulations apply to the major modifications (primary reheater replacements) undertaken at the Big Cajun II Units 1 and 2. | Live |
| Ralph Mabey<br>Stutman, Treister & Giatt<br>185 South State Street, Suite 1300<br>Salt Lake City, UT 84111-1537 | Mr. Mabey, the bankruptcy trustee for Cajun Electric, will testify about the contract of sale between Cajun Electric, LaGen, and NRG, and the primary reheater projects performed at Big Cajun II. | by written or videotape deposition |
| Dr. Ranjit Sahu<br>311 North Story Place,<br>Allhambra, CA 91801 | Dr. Ron Sahu is an engineer with extensive experience in air permitting who will testify as an expert about the significant net increase in emissions that the company reasonably should have expected as a result of the reheater replacement projects. | Live |

| | | |
|---|---|---|
| Michael O'Sullivan<br>NextEra Energy Resources,<br>700 Universe Blvd.,<br>Juno Beach, FL 33408 | Mr. O'Sullivan, a former Executive Director of United States Business Development for NRG, and the leader of the project management team for the acquisition of Big Cajun II, will testify about the contract of sale between Cajun Electric, LaGen, and NRG, and the primary reheater projects performed at Big Cajun II. | by written or videotape deposition |

| **MAY CALL WITNESSES (LIVE OR BY DEPOSITION)** | | |
|---|---|---|
| **Name & Address** | **Statement of Testimony** | **Deposition/Live** |
| Kenneth W. Austin<br>15909 LA Highway 417,<br>Batchelor, LA 70715 | Ken Austin is a former maintenance supervisor who worked at Big Cajun II for a number of years. Mr. Austin may testify about routine maintenance, repair, and replacement at Big Cajun II as well as major capital improvements (like the primary reheater replacements) at Big Cajun II. | Live |
| Bruce Biewald<br>22 Pearl Street<br>Cambridge, MA 02139 | Mr. Biewald is a utility system planner who may testify as an expert in rebuttal to certain opinions offered by Mark Chupka and Kenneth Weiss, two of LaGen's experts, about the relationship between unit availability and the generation of electricity. | Live |
| John Brewster<br>NAES Corporation<br>1180 NW Maple Street,<br>Suite 200<br>Issaquah, WA 98027 | Mr. Brewster, a former Vice President of Production and Plant Manager at Big Cajun II, may testify regarding the operation of Big Cajun II Units 1 and 2. | by written or videotape deposition |
| Ellender, Gary<br>Louisiana Generating LLC<br>112 Telly Street<br>New Roads, LA 70760 | Mr. Ellender is a LaGen employee and former Cajun Electric employee who may testify regarding primary reheater replacements undertaken at Big Cajun II in 1998 and 1999 and prior projects, PSD and Title V compliance, and other matters explained in his deposition. | Live or by written or videotape deposition |
| Victor Elmer<br>1026 Myrtle Bend<br>Breaux Bridge, LA 70517 | Mr. Elmer, a former Vice President of Operations at Big Cajun II, may testify regarding the operation of Big Cajun II Units 1 and 2. | by written or videotape deposition |

| Bryan Johnston<br>Louisiana Department of Environmental Quality<br>602 North 5th Street<br>Baton Rouge, LA 70802 | Mr. Johnston may testify about LDEQ's interpretations and practices concerning the Louisiana PSD and Title V regulations. Mr. Johnston also may testify about how the regulations to the major modifications (primary reheater replacements) undertaken at the Big Cajun II facility, Units 1 and 2. | Live |
|---|---|---|
| Hugh Larkin<br>15728 Farmington Road<br>Livonia, MI 48154 | Mr. Larkin is a certified public accountant who may testify as an expert about the company's treatment of the primary reheater replacement projects as capital improvements for accounting purposes. | Live |
| Bryan Ryder<br>Babcock Power Inc.<br>5 Naponset Street,<br>Worcester, MA 01606 | Mr. Ryder, an engineer who worked on the boiler assessments for Big Cajun II, may testify regarding the problems with the primary reheaters before they were replaced at Big Cajun II. | by written or videotape deposition |
| Dr. Bradley Venner<br>National Enforcement Investigations Center<br>Denver Federal Center, Building 25<br>Denver, CO 80225 | Dr. Venner is a statistician who may testify as an expert in rebuttal to certain opinions offered by Mark Chupka, one of LaGen's experts, on statistical matters. | Live |
| Williams, Alan<br>4528 Claycut Road<br>Baton Rouge, LA 70806 | Mr. Williams is the former President of LaGen and may testify about the acquisition of Big Cajun II from Cajun Electric, contracts negotiated as part of same and other matters explained in his deposition. | Written or Videotape deposition |
| Authenticity witnesses | If the parties are not able to reach an agreement as to the authenticity of plaintiffs' exhibits, plaintiffs will call one or more witnesses to testify about the authenticity concerning the specific exhibits at issue. | Live |

Plaintiffs reserve the right to call at trial (i) any witness named on Defendant's will call witness list, (ii) any fact witnesses offered solely for impeachment, (iii) any witness whose testimony is based upon developments during trial that could not reasonably be anticipated, and (iv) any witness called purely for rebuttal purposes.

(c). Defendant's Witnesses:

| WILL CALL WITNESSES ||
|---|---|
| **Name & Address** | **Statement of Testimony** |
| Chupka, Marc<br>The Brattle Group<br>1850 M Street NW, Suite 1200<br>Washington, DC 20036 | Mr. Chupka is an expert witness who is expected to testify regarding the significant emissions increase element of the PSD program, the flaws in Plaintiffs' emissions analyses, and other matters, as further explained in LaGen's Rule 26(b) disclosures and Mr. Chupka's reports and deposition. |
| Golden, Jerry<br>8066 Wellington Lane<br>Chattanooga, TN 27421 | Mr. Golden is an expert witness who is expected to testify regarding the RMRR exemption, its applicability to the primary reheater replacements undertaken in 1998 and 1999 at Big Cajun II, and other matters, as further explained in LaGen's Rule 26(b) disclosures and Mr. Golden's reports and deposition |
| Roland, Robert<br>Louisiana Generating LLC<br>112 Telly Street<br>New Roads, LA 70760 | Mr. Roland is a LaGen employee and former Cajun Electric employee who is expected to testify regarding the subject matter of this deposition, boiler operations, the scope and development of primary reheater replacements undertaken in 1998 and 1999 at Big Cajun II and prior projects, Cajun Electric's project approval process, and his experiences as an engineer at Cajun Electric. |

| MAY CALL WITNESSES (LIVE OR BY DEPOSITION) |||
|---|---|---|
| **Name & Address** | **Statement of Testimony** | **Deposition/Live** |
| Ahuja, Anupa<br>U.S. EPA<br>Region 6<br>1445 Ross Avenue<br>Suite 1200<br>Mail Code: 6EN<br>Dallas, TX 75202 | Ms. Ahuja is a U.S. EPA employee who may testify regarding the agency's RMRR analysis of the primary reheater replacements undertaken in 1998 and 1999 and other information in her deposition. | Deposition |
| Algero, Michael<br>LDEQ<br>602 N. Fifth Street<br>Baton Rouge, LA 70802 | Mr. Algero is an LDEQ employee who may testify about information in his deposition, including annual compliance inspections conducted by the agency. | Live or Deposition |

| Barrett, Michael<br>Ernst & Young, LLP<br>55 Ivan Allen Boulevard<br>Atlanta, GA 30308 | Mr. Barrett is an expert witness who may testify regarding accounting issues and other matters, as explained further in LaGen's Rule 26(b) disclosures and Mr. Barrett's reports and deposition. | Live |
|---|---|---|
| Brewster, John<br>NAES Corporation<br>1180 NW Maple Street, Suite 200<br>Issaquah, WA 98027 | Mr. Brewster is a former Cajun Electric employee who may testify regarding plant operations at Big Cajun II, LaGen's acquisition of Big Cajun II, and other matters explained in his deposition. | Live or Deposition |
| Burke, Shaun<br>U.S. EPA Headquarters<br>Ariel Rios Building<br>1200 Pennsylvania Avenue, N. W.<br>Mail Code: 2242A<br>Washington, DC 20460 | Mr. Burke is a U.S. EPA employee who may testify regarding the agency's emissions analyses for the primary reheater replacements undertaken in 1998 and 1999 and other matters explained in his deposition. | Deposition |
| Cage, Celena<br>LDEQ<br>602 N. Fifth Street<br>Baton Rouge, LA 70802 | Ms. Cage is an LDEQ employee who may testify about information in her deposition, including the agency's prevention of significant deterioration and Title V enforcement history. | Live or Deposition |
| Denton, Loren<br>U.S. EPA Headquarters<br>Ariel Rios Building<br>1200 Pennsylvania Avenue, N. W.<br>Mail Code: 2243A<br>Washington, DC 20460 | Mr. Denton is a U.S. EPA employee who may testify regarding the agency's factual investigation of the primary reheater replacements undertaken in 1998 and 1999 and other matters explained in his deposition. | Deposition |
| Ellender, Gary<br>Louisiana Generating LLC<br>112 Telly Street<br>New Roads, LA 70760 | Mr. Ellender is a LaGen employee and former Cajun Electric employee who may testify regarding primary reheater replacements undertaken at Big Cajun II in 1998 and 1999 and prior projects, PSD and Title V compliance, and other matters explained in his deposition. | Live |
| Fredlund, Alice<br>LDEQ<br>602 N. Fifth Street<br>Baton Rouge, LA 70802 | Ms. Fredlund is an LDEQ employee who may testify about information in her deposition, including the purpose and implementation of the Louisiana Emissions Inventory System. | Live or Deposition |

| | | |
|---|---|---|
| Garcia, David<br>U.S. EPA<br>Region 6<br>1445 Ross Avenue<br>Suite 1200<br>Mail Code: 6EN<br>Dallas, TX 75202 | Mr. Garcia is a U.S. EPA employee who may testify regarding the agency's factual investigation of the primary reheater replacements undertaken in 1998 and 1999 and other matters explained in his deposition. | Deposition |
| Griffith, Thomas<br>Louisiana Generating LLC<br>112 Telly Street<br>New Roads, LA 70760 | Mr. Griffith is a LaGen employee and former Cajun Electric employee who may testify regarding the subject matter of his deposition, the scope and development of primary reheater replacements undertaken in 1998 and 1999 at Big Cajun II and prior projects, Cajun Electric's project approval process, and his experiences as an engineer at Cajun Electric. | Live |
| Johnston, Bryan<br>LDEQ<br>602 N. Fifth Street<br>Baton Rouge, LA 70802 | Mr. Johnston is an LDEQ employee who may testify about information in his depositions, including the agency's understanding and implementation of the prevention of significant deterioration and Title V programs. | Live or Deposition |
| Jordan, Keith<br>LDEQ<br>602 N. Fifth Street<br>Baton Rouge, LA 70802 | Mr. Jordan is an LDEQ employee who may testify about information in his deposition, including administration of the Louisiana Emissions Inventory System. | Live or Deposition |
| LaCour, Jane<br>LDEQ<br>602 N. Fifth Street<br>Baton Rouge, LA 70802 | Ms. LaCour is an LDEQ employee who may testify about information in her deposition, including annual compliance inspections conducted at Big Cajun II. | Live or Deposition |
| Lloyd, David<br>U.S. EPA<br>61 Forsyth Street, S.W.<br>Mail Code: 9T25<br>Atlanta, GA 30303 | Mr. Lloyd is a U.S. EPA employee who may testify about information in his depositions, including the agency's understanding and implementation of the PSD and Title V programs. | Deposition |
| Mabey, Ralph<br>Stutman, Trester & Glatt<br>185 South State Street, Suite 1300<br>Salt Lake City, UT 84111 | Mr. Mabey served as trustee for Cajun Electric during its bankruptcy and may testify about the information in his deposition, including the bidding process for and eventual sale of Big Cajun II. | Deposition |

| | | |
|---|---|---|
| Manning, Michael<br>9233 Round Oak Dr.<br>Baton Rouge, LA 70817 | Mr. Manning is a former Cajun Electric employee who may testify regarding system planning, financial and accounting matters at Cajun Electric, RUS oversight and approval authority, and other matters explained in his deposition. | Live |
| Nolan, Cheryl<br>LDEQ<br>602 N. Fifth Street<br>Baton Rouge, LA 70802 | Ms. Nolan is an LDEQ employee who may testify about information in her deposition, including the development and issuance of Title V operating permits for Big Cajun II. | Live or Deposition |
| Ober, Richard<br>LDEQ<br>602 N. Fifth Street<br>Baton Rouge, LA 70802 | Mr. Ober is an employee of the LDEQ who may testify about information in his deposition, including the agency's enforcement of its PSD program. | Live or Deposition |
| O'Sullivan, Michael<br>NextEra Energy Resources<br>700 Universe Blvd.<br>Juno Beach, FL 33408 | Mr. O'Sullivan is a former employee of NRG Energy Inc. who may testify about the formation of LaGen for the purpose of acquiring Big Cajun II from Cajun Electric and other information explained in his deposition. | Deposition |
| Ryder, Brian<br>Babcock Power, Inc.<br>5 Neponset Street<br>Worcester, MA 01606 | Mr. Ryder is an employee of Babcock Power, Inc. who may testify about his experience with the boilers at Big Cajun II and with projects like the primary reheater projects throughout the utility industry and other information explained in is deposition. | Deposition |
| Smith, Thomas<br>Xcel Energy<br>Allen S. King Power<br>1103 King Plant Road<br>Bayport, MN 55003 | Mr. Smith is a former employee of NRG Energy Inc. who may testify about the due diligence conducted during the acquisition of Big Cajun II from Cajun Electric and other information explained in his deposition. | Deposition |
| Thompson, Steve<br>U.S. EPA<br>Region 6<br>1445 Ross Avenue<br>Suite 1200<br>Mail Code: 6EN<br>Dallas, TX 75202 | Mr. Thompson is a U.S. EPA employee who may testify regarding the agency's factual investigation of the primary reheater replacements undertaken in 1998 and 1999 and other matters explained in his deposition. | Deposition |

| Weiss, Kenneth Environmental Resources Management 350 Eagleview Boulevard, Suite 200 Exton, PA 19341 | Mr. Weiss is an expert witness who may testify regarding the history and implementation of the PSD program from the perspective of a permitting engineer and other matters, as explained further in Louisiana Generating LLC's Rule 26(b) disclosures and Mr. Weiss' reports and deposition. | Live |
|---|---|---|
| Williams, Alan 4528 Claycut Road Baton Rouge, LA 70806 | Mr. Williams is the former President of LaGen and may testify about the acquisition of Big Cajun II from Cajun Electric, contracts negotiated as part of same and other matters explained in his deposition. | Live |

Defendant reserves the right to call at trial (i) any witness named on Plaintiffs' will call witness list, (ii) any fact witnesses offered solely for impeachment, (iii) any witness whose testimony is based upon developments during trial that could not reasonably be anticipated, (iv) any witness called purely for rebuttal purposes, and (v) in the event the parties cannot reach agreement on the authenticity of certain exhibits, any witness necessary to authenticate such a disputed document.

## 9. AMENDMENTS

None.

## 10. ADDITIONAL MATTERS

1. This matter is designated as a jury trial.

2. The parties estimate the case can be tried in two weeks and have considered the possibility of settlement.

3. Plaintiffs' presentation of evidence will require five days. Defendant's presentation of evidence will require five days.

Dated: August 6, 2012

DC01:660124.1  16

Case 3:09-cv-00100-JJB-DLD   Document 300   08/06/12   Page 16 of 18

Respectfully submitted,

/s/ Richard Gladstein
Richard M. Gladstein (DCN 362404)
Trial Attorney
James A. Lofton
Justin A. Savage
Elias Quinn
Bradford T. McLane
Andrew Hanson
Jennifer Lukas-Jackson
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 514-1711
(202) 616-7915
E-mail: Richard.Gladstein@usdoj.gov

DONALD J. CAZAYOUX, JR.
UNITED STATES ATTORNEY

John J. Gaupp, LBN 14976
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
Telephone: (225) 389-0443
Fax: (225) 389-0685
Email: john.gaupp@usdoj.gov

OF COUNSEL:
Melanie Shephardson
Attorney –Advisor
Air Enforcement Division
U.S. Environmental Protection Agency
1200 Pennsylvania, Ave., N.W.
Washington, D.C. 20460

Lorrain Dixon
Assistant Regional Counsel
U.S. EPA, Region 6
1445 Ross Avenue
Dallas, Texas 75202

HERMAN ROBINSON (LA #2077)
Executive Counsel
Louisiana Department of Environmental Quality

/s/ Dwana C. King
Dwana C. King, Trial Attorney (LA #20590)
Kathy Wright, Attorney (LA#30804)
Christopher A. Ratcliff, Atty Sup. (Bar #18675)
Louisiana Department of Environmental Quality
P. O. Box 4302
Baton Rouge, Louisiana 70821-4302
Telephone: (225) 219-3985
Facsimile: (225) 219-4068
E-mail: dwana.king@la.gov

COUNSEL FOR LOUISIANA GENERATING LLC

/s/ Kent Mayo
James P. Doré
Kean Miller LLP
400 Convention Street, Suite 700
Baton Rouge, Louisiana 70802
Telephone: 225-387-0999
Fax: 225-388-9133
Email: jim.dore@keanmiller.com

- and -

David Super (admitted *pro hac vice*)
Kent Mayo (admitted *pro hac vice*)
Megan Berge (admitted *pro hac vice*)
Baker Botts L.L.P.
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2400
(202) 639-7700

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2012 copies of the foregoing Proposed Uniform Pretrial Order was electronically filed via the ECF System and emailed to counsel of record via that system.

/s/ Richard Gladstein
Richard Gladstein

DC01:660124.1 18

Case 3:09-cv-00100-JJB-DLD   Document 300   08/06/12   Page 18 of 18